# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LYNN MICHELE DAUGHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-cv-458 |
| ) | VARLAN / GUYTON |
| ZACHARY GRAVES, in his individual and ) | |
| official capacity as an employee of the Town of ) | |
| Jacksboro, Tennessee; ) | |
| TOWN OF JACKSBORO, TENNESSEE; ) | |
| BEN MARLOW, in his individual and official ) | |
| capacity as an employee of the Town of Caryville, ) | |
| Tennessee; and ) | |
| TOWN OF CARYVILLE, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF ROY BEDARD

Defendants Zachary Graves, Town of Jacksboro, Ben Marlow, and Town of Caryville hereby appear, by and through counsel, and for Defendants' Memorandum in Support of their Motion to Exclude the Opinions of Roy Bedard state as follows:

### I. FACTUAL SUMMARY

For a full treatment of the facts of this matter, please see Defendants' Memorandum in Support of Motion for Summary Judgment. (Doc. 26, pp. 4-9). Of particular relevance is the video of this entire incident which is filed in support of Defendants' Motion for Summary Judgment as Exhibit A. (Doc. 27).

Essentially, the facts of this case are as follows:

Plaintiff Lynn Daugherty responded to a phone call from her son, Michael Russell, on the morning of May 29, 2011. After consuming alcohol, part of the evidence of which consisted of

multiple beer cans littered in Mr. Russell's floorboard of his vehicle, Mr. Russell was pulled over by Defendant Ben Marlow and evaluated for DUI. Zachary Graves was called to the scene and evaluated Russell as well. It was decided by the officers that for Russell's own safety he should call someone for a ride home.

Ms. Daugherty came to the scene, and as shown on the video referenced above, was belligerent and angry that her son had contacted her to provide him a ride home. Ms. Daugherty took out her anger on Officers Marlow and Graves, becoming unruly, belligerent, and noncompliant with the officers' lawful commands. Ms. Daugherty was arrested and ultimately handcuffed.

## II. OVERVIEW OF MR. BEDARD'S OPINIONS

A review of the report[1] provided by Plaintiff's purported expert, Roy Bedard, reveals a document that apparently relies upon sheer volume of words more than any meaningful analysis necessary to qualify him an expert under Fed. R. Evid. 702 and Fed. R. Civ. P. 26. As best can be determined by a review of Mr. Bedard's rambling report, the opinions that have been purchased from Mr. Bedard by the Plaintiff appear to be as follows:

1. Opinions pertaining to Ms. Daugherty's state of mind. (Bedard Report, p. 10).

2. Opinions relating to lawyer questions. (Bedard Report, p. 11).

3. Opinions pertaining to the defendant officers' dealings with Michael Russell. (Bedard Report, p. 11).

4. Opinions regarding the alleged targeting of Ms. Daugherty's sons. (Bedard Report, p. 12).

5. Opinions regarding the seizure of Michael Russell. (Bedard Report, p. 13).

---

[1] A copy of Mr. Bedard's report is attached to this Motion as Exhibit A.

6. Opinions stating that the Fourth Amendment rights of Daugherty and Russell were violated. (Bedard Report, p. 13).

7. An opinion that Ms. Daugherty was "assaulted." (Bedard Report, p. 14).

8. An opinion that Ms. Daugherty was resisting an "unlawful arrest." (Bedard Report, p. 14).

9. An opinion that the arrest was "excessive, unreasonable and without legal merit." (Bedard Report, p. 15).

10. An opinion that the officers imposed on Ms. Daugherty's rights and those of her son. (Bedard Report, p. 14).

11. An opinion that the Plaintiff was unlawfully arrested violating Ms. Daugherty's rights under the Fourth and Fourteenth Amendments to the United States Constitution without probable cause which proximately caused her injuries. (Bedard Report, p. 15).

### III. LAW AND ARGUMENT

#### A. STANDARD OF REVIEW

Under the standards first articulated by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the purported expert testimony of Mr. Bedard is inadmissible at trial, and therefore, it is respectfully requested that this Court bar Plaintiff's purported expert from testimony at trial in this case.

In Daubert, the Supreme Court established the standard for admissibility of expert testimony under Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

3

>   principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see Daubert, 509 U.S. at 589-91.

In cases in which expert testimony is offered, the trial judge must act as a gatekeeper, admitting only that expert testimony that is both reliable and relevant. Daubert, 509 U.S. at 589. In this role, a district court must assess the validity of the reasoning and methodology underlying the proffered testimony and the application of that reasoning and methodology to the facts. Id. at 592-93. This assessment ensures that the testifying expert applies the same "intellectual rigor that characterizes the practice of an expert in the relevant filed." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

In order to present testimony regarding a particular subject matter, an expert witness "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). A witness is not expert merely because he claims to be. Pride, 218 F.3d at 577. Even if qualified as an expert, the witness may not present testimony which is based on insufficient facts or in which the asserted connection between the facts and the expert's opinion is too tenuous. Such testimony is unreliable and, therefore, inadmissible. See Greenwell v. Boatwright, 184 F.3d 492, 497 (6th Cir. 1999); Glaser v. Thompson Med. Co., Inc., 32 F.3d 969, 972 (6th Cir. 1994). Additionally, the testimony to be presented must be sufficiently relevant to "assist the trier of fact in understanding and disposing of issues relevant to the case." Pride, 218 F.3d at 578. The expert witness proffered by Plaintiff does not meet these standards and should not be permitted to testify at the trial of this case.

4

**B. THE OPINIONS AND TESTIMONY OF ROY BEDARD SHOULD BE EXCLUDED AS PLAINTIFF CANNOT ESTABLISH THAT BEDARD IS QUALIFIED TO RENDER THE EXPERT OPINIONS STATED IN HIS REPORT**

Under Federal Rule of Evidence 702, the proffered expert must be "qualified… by knowledge, skill, experience, training or education." It is the proponent of expert opinion testimony who must establish its admissibility by a preponderance of proof. Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244, 250 (6th Cir. 2001).

In Plaintiff's report, Mr. Bedard lists his experience and purported qualifications that allegedly qualify him to render expert opinions in this case. Essentially, Mr. Bedard's qualifications are as follows: In terms of education, Mr. Bedard holds a bachelor's degree from Florida State University, and is allegedly a student in a master's program in psychology.[2] In terms of work experience, Mr. Bedard apparently was a police officer in the state of Florida for twenty-four (24) years. In fact, all of his education, experience and training pertain to law enforcement in the state of *Florida*. There is not one single shred of evidence that shows Bedard has any familiarity and/or experience with generally accepted law enforcement practices for law enforcement officers and/or agencies within the state of Tennessee.

From a review of Mr. Bedard's "report" it is clear he is not qualified to render the opinions the Plaintiff has purchased from him. Bedard has never had any experience, practice or otherwise pertaining to law enforcement in the state of Tennessee. It is the proponent's burden to establish expert's qualifications to render expert opinions. See Nelson at 250. Under Fed. R. Evid. 702, expert witnesses must be qualified to testify to a matter relevant to the case at issue. See Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 293 (6th Cir. 2007).

---

[2] Whether he is a fulltime or part-time student is not clear.

5

Plaintiff apparently bases his qualifications to render an expert opinion in this matter on his experience. As shown above, the sum total of Bedard's experience amounts to nothing more than his practice of law enforcement in the state of Florida. Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience. See e.g. United States v. Cunningham, 679 F.3d 355, 379 (6th Cir. 2012), citing United States v. Lupton, 620 F.3d 790, 799 (7th Cir. 2007) (noting that a proposed expert's thirty (30) year distance from the day to day goings on in the brokerage world and lack of experience with the statutes and contracts at issue in the case called into question the extent to which the expert was qualified to render an opinion on the industry standards of practices among local real estate brokers). Bedard's training and experiences in Florida do not assist the trier of fact in assessing a Tennessee police officer's actions.

Even a cursory review of Bedard's "analysis" shows his utter lack of unfamiliarity with Tennessee law and generally accepted law enforcement standards in the state of Tennessee. For example, Bedard seems to argue that Plaintiff was rightfully resisting an unlawful arrest. As stated above and shown in his report by omission, Mr. Bedard apparently has absolutely zero experience with any issue pertaining to law enforcement officers in the state of Tennessee. He apparently also has zero familiarity with the requirements imposed by Tennessee statutes pertaining to the conduct of police officers, and has zero familiarity with the requirements and training given by the Tennessee Peace Officers Standards Training Commission (P.O.S.T.), the entity that is charged with supervising law enforcement officer training in the state of Tennessee. Given these facts, it is absurd that Bedard's "opinion" could be taken seriously as it relates to the present case.

6

Further, Mr. Bedard's opinion is not based on sound factual underpinnings grounded in the state of the law in the state of Tennessee. For example, Bedard claims Plaintiff was rightfully resisting an unlawful arrest.[3] Unfortunately for Mr. Bedard, there is no right in Tennessee to resist an "unlawful arrest." As stated by Judge Inman of the Eastern District of Tennessee in the case of Stubblefield v. Hawkins County, 2007 WL 4365758 (E.D.Tenn. Dec. 11, 2007).

> In some states within the Sixth Circuit, e.g., Michigan, a citizen may properly resist an unlawful arrest. In Tennessee, however, a citizen has no right to resist an arrest, whether lawful or unlawful. Therefore, Price's physical contact with Plaintiff, and then of course, LaFollette's contact with Plaintiff, was the result of Plaintiff's admitted resistance to Price's efforts to arrest him. Plaintiff's claim for assault and battery will be dismissed.

See Tenn. Code. Ann. § 39-16-602(b)("it is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful").

This is just one example of Mr. Bedard's complete lack of grasp of Tennessee statutes and commonly accepted law enforcement practices within the state of Tennessee. Given those facts, it is evident that Mr. Bedard is not qualified to render expert opinions in this case. Therefore, it is submitted that Mr. Bedard should be excluded from testimony in this case.

---

[3] A review of Plaintiff's Complaint and the Order on Defendants' Motion to Dismiss shows that the legality of the underlying arrest is not even an issue in this case. This is further discussed in Defendants' Reply to the Plaintiff's Response to Motion for Summary Judgment. (See Doc. 31).

7

C. **ROY BEDARD'S OPINIONS ARE NOT RELIABLE AND WILL NOT ASSIST THE TRIER OF FACT TO UNDERSTAND THE EVIDENCE OR DETERMINE A FACT IN ISSUE BECAUSE THEY LACK SUFFICIENT INDICATION OF THE UNDERLYING PRINCIPALS OR METHOD USED OR HOW THE METHOD IS APPLIED.**

Roy Bedard has been offered as an expert witness on behalf of the Plaintiff. A review of Bedard's report shows an unsound method that warrants his exclusion from offering any expert testimony in this case.

Expert opinions should be excluded if the expert merely gives a "slant on the facts that are in the record." Yancey v. Carson, No's 3:04-CV-556, 3:04-CV-610, 2007 WL 3088232, at *4 (E.D.Tenn.Oct.19, 2007)(quoting Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D.273 (S.D.Ala.2006)). A review of Bedard's report finds no indication as to the method used by him in generating his slant on the facts of this case. "An expert's analysis [must] be reliable at every step… any step that renders the analysis unreliable… renders the expert's testimony inadmissible." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2nd Cir.2002). "If the expert is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experiences reliability is applied to the facts. The trial court's gatekeeping function requires more than simple 'taking the experts word for it.'" Fed. R. Evid. 702 CMTS.2000 amends. (quoting Daubert v. Merrell Dowell Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995).

In Mr. Bedard's report, he makes no reference at all to any standards, law, or other authority pertaining to law enforcement officers in the state of Tennessee. There is absolutely zero discussion of the generally accepted practices and procedures of law enforcement officers in Tennessee in his report, likely, because Mr. Bedard has absolutely zero experience on the issue.

8

Bedard's report is nothing more than his parroting of Plaintiff's allegations. Expert opinions must be grounded in solid analysis and not merely a spin on Plaintiff's allegations. As the Sixth Circuit has held, "an important factor in a Daubert analysis is whether the expert is testifying about matters arising naturally and independently of litigation or whether opinions are developed solely for the purpose of testifying." Johnson v. Manitowoc Boom Trucks, Inc., 406 F. Supp. 2d 852, 865 (M.D. Tenn. 2005) aff'd, 484 F.3d 426 (6th Cir. 2007) (citing Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 303 (6th Cir.1997) (noting that this factor was added to the traditional analysis by the Ninth Circuit on remand in Daubert, and quoting it with approval)). See also Lake Michigan Contractors, Inc., v. Manitowoc Co., 225 F.Supp.2d 791, 795 (W.D.Mich.2002) (noting the Sixth Circuit's adoption of this factor in Smelser); Downs v. Perstorp Components, Inc., 126 F.Supp.2d 1090, 1098 (E.D.Tenn.1999) (taking into account that expert's opinions developed in connection with litigation and ultimately finding expert testimony inadmissible for this and other reasons). The Sixth Circuit recognizes that consideration of this factor is entirely appropriate, in light of the Supreme Court's exhortations in Kumho for a flexible approach. Johnson v. Manitowoc Boom Trucks, Inc., 406 F. Supp. 2d at 865. Close judicial analysis of expert testimony is necessary "because expert witnesses are not necessarily always unbiased scientists." Id. (quoting Turpin v. Merrell Dow Pharm., Inc., 959 F.2d 1349, 1352 (6th Cir.1992)). See also Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244 (6th Cir.2001) (finding that the magistrate judge did not abuse his discretion in considering that expert testimony was prepared in the context of the litigation and at the behest of plaintiff's counsel, or by concluding that this fact militated against the admissibility of the expert's opinion.). Mr. Bedard is clearly the quintessential expert for hire. His report and opinions are

unreliable and inadmissible because they were prepared solely for the purposes of testifying in this case.

Bedard's report and opinions are also untrustworthy as a portion of the report focuses on Bedard's bizarre claim that Michael Russell's rights were somehow violated in this matter. Mr. Russell is not, and has never been, a Plaintiff in this action. In fact, Mr. Russell has never sued the Town of Caryville, the Town of Jacksboro, Zachary Graves or Ben Marlow in conjunction with this matter. Accordingly, Mr. Bedard's overzealous advocacy in exchange for payment demonstrates the inherent untrustworthiness of the report. Bedard focuses his report on wholly irrelevant issues pertaining to the interaction between the police officers and Michael Russell. An expert's proposed testimony must be relevant, meaning the testimony "will help the trier of fact to understand the evidence or to determine an issue in fact." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529 (6th Cir. 2008).

Accordingly, due to the unreliable analysis contained in Mr. Bedard's report and opinions expressed therein, it is respectfully requested that this Honorable Court bar Mr. Bedard from any testimony in this matter.

**D.    ROY BEDARD'S OPINIONS ARE UNTRUSTWORTHY BECAUSE THE FACTUAL BASIS UPON WHICH HE RELIES AND BASES HIS OPINION ON ARE MERE SPECULATION UNSUPPORTED BY THE RECORD AND FAIL TO CONSIDER THE RECORD AS A WHOLE**

A review of Bedard's report shows that his opinion is untrustworthy, does not include all relevant facts, and assumes facts that have not been established in this case. An expert opinion must be based "on factual underpinnings" that are "sound." Greenwell v. Boatwright, 184 F.3d 492, 498 (6th Cir. 1999); See Fed. R. Evid. 702 ("Expert testimony must be "based upon sufficient facts or data"). At the same time, admissible expert testimony cannot ignore relevant

evidence. Here the data that supports the testimony is incomplete and indeed assumes facts that have not been established in the record in this case.

In order to testify at trial, an expert witness must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant filed." Kumho Tire, 526 U.S. at 152. Because Bedard ignored facts relevant to this matter and indeed assumes facts that have not been established in the record, his analysis and opinions are inherently unreliable. See Demerrell v. City of Cheboygan, 206 Fed. Appx. 418, 427 (6th Cir. 2006) (holding that the District Court properly ignored expert report which either failed to acknowledge or refer to uncontroverted facts); Fed. R. Evid. 702 (Expert testimony must be "based upon sufficient facts" and must apply "principals and methods reliably to the facts of the case".) Based upon Bedard's unreliability, this Court should exclude Plaintiff's purported expert from testifying at trial.

**E. MR. BEDARD'S OPINIONS ON QUESTIONS OF LAW SHOULD BE EXCLUDED, AS QUESTIONS OF LAW ARE NOT A PROPER SUBJECT FOR EXPERT TESTIMONY.**

As found in Mr. Bedard's report, Mr. Bedard opines on several questions of law that are not proper subjects for the role of expert testimony.[4] Accordingly, it is respectfully requested that this Honorable Court exclude Mr. Bedard's opinions accordingly.

For example, Mr. Bedard claims that probable cause did not exist. Matters such as probable cause are questions of law, and therefore, statements of legal conclusions are not admissible as expert testimony. See e.g. Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (court holding that probable cause is a question of law, and therefore, expert testimony on that question of law is inadmissible).

---

[4] Bedard claims probable cause for arrest did not exist, that Plaintiff's Fourth and Fourteenth Amendment rights were violated, that Plaintiff was "assaulted" and that the force used constituted excessive force. (Bedard Report, pp. 13-15).

An expert opinion on a question of law is inadmissible. <u>Chevez v. Carranza</u>, 559 F.3d 486, 498 (6th Cir. 2009), citing <u>Berry v. City of Detroit</u>, 25 F.3d 1342, 1353-54 (6th Cir. 1994).

In <u>Berry</u>, this Circuit held that "when the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that *suggest* the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." Emphasis added. <u>Id</u>. See, also, <u>Demerrell v. City of Cheboygan</u>, 2006 WL 3090133 at *7 (C.A.(Mich.)). (Sixth Circuit holding Plaintiff/Appellant's expert opinion stating that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that Mr. Demerrell posed a significant threat of death or serious physical injury to the officer or others" was a legal conclusion going beyond "stating opinions that suggest the answer to the ultimate issue.").

Accordingly, given the fact that Plaintiffs' purported expert, Mr. Bedard, essentially does nothing more than state legal conclusions in his report, it is respectfully requested that this Honorable Court exclude Mr. Bedard from testimony in this case. Any and all opinions offered by Mr. Bedard pertaining to the alleged violation of the Fourth Amendment, opinions that Ms. Daugherty was "assaulted" under Tennessee law, opinions that an unlawful arrest occurred, that the use of force was excessive and unreasonable, and that her constitutional rights were violated, are all questions of law that are not proper subjects for expert opinion, and therefore, are inadmissible. See <u>Berry</u>, 25 F.3d 1342, 1353-54. (See Bedard Report, pp. 13-15).

**F.     MR. BEDARD'S OPINIONS ON IRRELEVANT MATTERS SHOULD BE EXCLUDED BY THIS COURT.**

In Roy Bedard's report he advances a number of "opinions" on matters wholly irrelevant to this case. This case is about Plaintiff's allegations of excessive force. (<u>See</u> Doc. 13, Memorandum Opinion and Order, p. 8). This case does not involve allegations pertaining to the

alleged violation of Michael Russell's rights. This case is not about an alleged unlawful arrest without probable cause. (See Doc. 13, Memorandum Opinion and Order, p. 8). This case is not about an alleged conspiracy. (See Doc. 13, Memorandum Opinion and Order, p. 8).

This does not stop Mr. Bedard from playing the role of amateur psychologist, offering opinions pertaining to the Plaintiff's "state of mind," and alleged justifications for her unruly and unlawful behavior. (Bedard Report, pp. 10-11). These are completely irrelevant to the issue of whether the actions of the individual officers objectively state a cause of action for excessive force under the Fourth Amendment to the United States Constitution. Furthermore, a party's state of mind is not within the knowledge of any expert. See Johnson v. Baker, 2009 WL 3486000 (W.D. Ky. Oct. 23, 2009) (citing Woodhull v. County of Kent, 2006 WL 2228986, *6 (W.D.Mich. Aug.3, 2006) ("Objective facts and circumstances may provide evidence of a defendant's state of mind, but conclusory statements ... do not assist the trier of fact."); United States v. Libby, 461 F.Supp.2d 3, 7 (D.D.C.2006) ("Expert testimony will also be precluded if it would usurp the jury's role as the final arbiter of the facts, such as testimony on witness credibility and state of mind.")). Various courts have excluded expert testimony on issues relating to state of mind in civil cases. Johnson at *5 (citing Halcomb v. Washington Metro. Area Transit Auth., 526 F.Supp.2d 24, 29-30 (D.D.C.2007)(excluding statements that "plaintiff was 'humiliated,' " that the defendant's acts were "ministerial, authoritative, and vindictive," and that defendant acted "wittingly," among others); Woodhull, 2006 WL 2228986, *6 (expert could not give conclusory statements that defendant acted with "deliberate indifference"); Meals v. City of Memphis, 2005 WL 5988642, *2 (W.D.Tenn. Feb.10, 2005) ("[N]either expert may testify as to the perceptions of Mr. Harris himself or the effect of the alleged pursuit on Mr. Harris' state of mind.").

13

Plaintiff also curiously offers opinions on defense counsel's questions in Plaintiff's discovery deposition. The irrelevance of this tactic and opinions relating thereto are self-evident.

Next, all opinions offered by Bedard pertaining to Michael Russell and Ms. Daugherty's other son (i.e. that Ms. Daugherty's sons were allegedly targeted by some law enforcement agency) are also irrelevant to the present action. These wild claims do not stand the test of relevant evidence in this matter.

Finally, any and all opinions pertaining to an alleged unlawful arrest without probable cause should be excluded as they are irrelevant to Plaintiff's claims of excessive force. Not only are any and all opinions pertaining to whether probable cause existed for Ms. Daugherty's arrest legal questions which should be excluded under Berry, they are also irrelevant to Plaintiff's cause of action for excessive force under the Fourth Amendment. As observed by the Court in the Order on Defendants' Motion to Dismiss (Doc. 13), Plaintiff's only remaining constitutional claim is that for excessive force. Accordingly, any and all opinions pertaining to the probable cause issue are properly excluded by this Court.[5]

---

[5] This is further discussed in Defendants' Reply to the Plaintiff's Response to Defendants' Motion for Summary Judgment. (See Doc. 31, pp. 2-3).

## CONCLUSION

Due to the above-referenced facts and law, it is submitted that Plaintiffs' purported expert, Roy Bedard should be excluded from any testimony at the trial of this matter under the standards found herein.

RESPECTFULLY submitted this 18th day of December, 2012.

>ZACHARY GRAVES, TOWN OF JACKSBORO, TENNESSEE, BEN MARLOW, and TOWN OF CARYVILLE, TENNESSEE
>
>By: /s/Emily A. Cleveland, BPR No. 027157
>EMILY A. CLEVELAND, BPR NO. 027157
>REID A. SPAULDING, BPR NO. 023363
>Attorneys for Defendants
>WATSON, ROACH, BATSON,
>ROWELL & LAUDERBACK, P.L.C.
>Attorneys at Law
>1500 Riverview Tower
>900 South Gay Street
>P.O. Box 131
>Knoxville, Tennessee 37901-0131
>(865) 637-1700

## CERTIFICATE OF SERVICE

   I hereby certify that on Tuesday, December 18, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system:

     Patrick L. Looper
     2000 First Tennessee Plaza
     800 S. Gay Street
     Knoxville, Tennessee 37929-9710

Dated December 18, 2012.

            /s/Emily A. Cleveland, BPR No. 027157
            EMILY A. CLEVELAND, BPR NO. 027157
            Attorney for Defendants
            WATSON, ROACH, BATSON,
            ROWELL & LAUDERBACK, P.L.C.
            Attorneys at Law
            1500 Riverview Tower
            900 South Gay Street
            P.O. Box 131
            Knoxville, Tennessee 37901-0131
            (865) 637-1700

16

Case 3:11-cv-00458-TAV-HBG  Document 33  Filed 12/18/12  Page 16 of 16  PageID #: 606