UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LYNN MICHELE DAUGHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-CV-458 |
| ) | (VARLAN/GUYTON) |
| V. ) | |
| ) | |
| ZACHARY GRAVES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 39] referring Defendants' Motion to Exclude Witness, Pursuant to Daubert and Rule 702 of the Federal Rules of Evidence [Doc. 32] to the undersigned for disposition.

### I. BACKGROUND

Plaintiff alleges that on May 29, 2011, her son, Michael Russell ("Russell"), was the subject of a traffic stop by Defendant, Officer Ben Marlow, of the Caryville Police Department. Marlow investigated Russell for possible driving under the influence. Defendant Officer Zachary Graves, of the Jacksboro Police Department, arrived on the scene, and he also investigated Russell for possible driving under the influence. Neither officer arrested or charged Russell with any crime. Instead, they told Russell that he could go home, but only if someone picked him up and drove him home. Russell called the plaintiff, who was at her residence. This occurred at approximately 1:00 a.m. The Plaintiff drove to the scene and there engaged officers

Marlow and Graves in a vigorous discussion about the situation. The entire exchange is captured on video and audio recording [Doc. 27, Exhibit A], and a word-by-word recounting is not necessary for the purposes of the pending motion.

In short, the Plaintiff disagreed with the actions taken by the two officers, and the conversation became heated. Officer Graves seized the Plaintiff by the arm and handcuffed her, with her hands behind her, effectuating her arrest.[1] After Plaintiff complained that the handcuffs were causing her pain, the officers removed the handcuffs and re-cuffed her with her hands in front.

## II. THE ISSUE OF EXCESSIVE FORCE

Chief District Judge Thomas A. Varlan has ruled that the issue in this case is whether the officers violated the Plaintiff's "Fourth Amendment right to be free from excessive force in the context of an arrest or seizure. . ." [Doc. 13]. Therefore, for the opinions of an expert witness to be relevant, they must go to the question of whether Officers Graves or Marlow used excessive force in the course of arresting the Plaintiff.

In support of her claim that the defendant Officers used excessive force, the Plaintiff intends to present the opinion testimony of Roy Bedard ("Bedard"), a law enforcement instructor and police officer in Tallahassee, Florida. Bedard has prepared a report containing his background, training, experience, and opinions, titled "Expert's Review Of Use Of Force And Arrest," [Doc. 32-1].

The Defendants seek to exclude Bedard's opinions. The Defendants argue that Bedard is not qualified to render the expert opinions stated in his report, that his opinions aren't reliable,

---

[1] Plaintiff ultimately was charged with interfering with a police investigation and resisting arrest. The charges were dismissed.

that his opinions are without factual basis, or are irrelevant, and that his opinions on questions of law are improper [Docs. 33, 35]. The Plaintiff responds that Bedard is qualified by experience, education, and training, and that his opinions "regarding police conduct" would aid the trier of fact [Doc. 34].

### III.  STANDARD FOR EXPERT OPINION EVIDENCE

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589.

The Daubert standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176–77 (6th Cir. 2009). There is no definitive checklist for applying the Daubert standard. However, there are four relevant inquiries: (1) whether the theory or technique can be or has been tested; (2) whether it "has been subjected to peer review and publication"; (3) whether there is a "known or potential rate of error"; and (4) whether the theory or technique enjoys general acceptance in the relevant

3

scientific community. 509 U.S. at 593–94. These factors are neither "definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case." Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001). "The inquiry envisioned by Rule 702 is . . . a flexible one." Daubert, 509 U.S. at 594.

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. With this framework in mind, the Court will now address the Defendants' motion.

IV. ANALYSIS

The Court has reviewed Bedard's report and the record in this case. The Court finds that almost all of Bedard's opinions do not state expert opinions at all, but "simply provide the witness's slant on facts that are in the. . . record." Yancey v. Carson, 2007 WL 3088232 (E.D.Tenn. Oct. 19, 2007) (citing Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 281 (S.D.Ala. 2006)).

In Ciba, the Court went on to observe that the expert's report "reads like the fact section of a brief, not the report of any expert witness," and that "the vast majority of [the] report simply summarizes and states [the expert's] advocacy based interpretation" of the record. Id.

Similarly, in the present case, as in Yancey and in Ciba, Bedard has offered his advocacy-based interpretation of facts that are already in the record. Bedard speculates on the subjective intent of everyone involved in the incident, their states of mind, and the reasonableness of their actions. He opines on the alleged targeting of Plaintiff's sons, and the lawfulness of Plaintiff's arrest. Bedard's report goes beyond reading like "the fact section of a brief." It more resembles a lawyer's closing argument to the jury.

Moreover, Bedard's opinions are rife with legal conclusions. Under Rule 704 of the Federal Rules of Evidence, an expert may give an opinion which embraces an ultimate issue to be decided by the trier of fact. However, the "issue embraced must be a factual one." Yancey, 2007 WL 3088232 *5. Nonetheless, Bedard opines (1) that law enforcement officers have no legal "duty to protect" and thus "can not be held responsible for the hypothetical possibility that someone might harm someone else;" (2) that Plaintiff's son had the legal right to drive home after the traffic stop; (3) that "Tennessee law" does not allow certain actions taken by the officers in this case; (4) that Plaintiff's "Fourth Amendment rights" were violated; (5) that the officers "assaulted" the Plaintiff as they "invaded her personal space and projected to her what reasonably appeared to be a physical confrontation;" (6) that the Plaintiff was "resisting an unlawful arrest;" (7) that the Plaintiff "had not violated any laws at all;" (8) that "the officers unlawfully arrested Lynn Daugherty and violated her Constitutional rights;" (9) that the officers used "excessive force" when arresting the Plaintiff; and (10) that the amount of force used when arresting the Plaintiff was "unreasonable and unnecessary."

The foregoing are all legal opinions, based on the facts as Bedard has interpreted them. These opinions weigh the evidence, find the facts, apply the law as Bedard sees it (for which he is not qualified), and resolve the case. These opinions do not assist the jury; rather, they supplant the jury. They are inadmissible as legal conclusions. See DeMerrell v. City of Cheboygan, 206 Fed. Appx. 418 (6th Cir. 2006); see also, Norman v. City of Lorain, Ohio, 2006 WL 5249725 (N.D. Ohio, Nov. 27, 2006)(citing DeMerrell and holding that Plaintiff's expert could not testify that the force used was "unreasonable" or "unnecessary").

To the extent that this is what the Court finds in Bedard's report, the Motion must be granted. Plaintiff appears to concede that the above-listed opinions must be excluded, stating: "These are issues [conclusions of law and opinions on state of mind] for the Court and the jury; therefore the Plaintiff agrees that with regard to these areas [sic]." [Doc. 34]. Accordingly, the Court will exclude these inadmissible opinions.

There are some matters on which the Court finds that Bedard is qualified to opine, based on his education, training, and experience. The Defendants argue that Bedard is a certified police officer and instructor in the state of Florida, not Tennessee, and thus Bedard should not be allowed to opine regarding the actions of Tennessee police officers. The Court finds, however, that he is qualified to opine on matters of generally accepted standards for police practice and procedure, so long as they are relevant to the issue in this case. For example, a qualified expert in an excessive force case can testify about the "continuum of force" employed by officers generally, as well as the specific training the officers in the case before the Court did receive and whether their conduct in a particular instance violated those standards. United States v. Eberle, 2008 WL 4858438 (E.D.Mich. Nov. 10, 2008).

Accordingly, in his report, Bedard does articulate certain opinions which are admissible, pursuant to the applicable case law. The following opinions from the numbered pages of Bedard's report, and only the following opinions, shall be admissible at trial:

> Properly trained police officers are taught to manage a variety of emotions that are presented to them regularly by people who they interact with. For it is understood that when the police interact with citizens on calls for service, it is often because something is not quite right or may be terribly wrong. Officers will, on any given day, likely be faced with emotions ranging from mild to extreme. Using a variety of interpersonal skills and techniques they are expected to de-escalate highly emotional individuals, diffuse aggression and restore calm to the police investigation. This is the basic premise for reducing incidents of use of force. [Doc. 32-1 at 13].
>
> Maturity and professionalism dictates that an officer, having been faced with an irritated, angry but otherwise harmless citizen should always attempt to diffuse the anger and frustration felt by citizens who are inconvenienced by law enforcement practices. In most cases, angry citizens are just looking for an opportunity to vent. Venting may be loud, rude or even insensitive to the officers' feelings; but officers are trained to endure this, learning early on not to take any non-harmful dialog personally. [Doc. 32-1 at 13].

## V. CONCLUSION

For the reasons stated herein, the Defendant's Motion To Exclude Witness [Doc. 32] is **GRANTED IN PART**, and **DENIED IN PART**, as set forth in this Memorandum and Order.

**IT IS SO ORDERED**.

ENTER:

　　　　s/ H. Bruce Guyton
United States Magistrate Judge