UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LYNN MICHELE DAUGHERTY,      )
                             )
          Plaintiff,         )
                             )
v.                           )      No.:  3:11-CV-458
                             )           (VARLAN/GUYTON)
ZACHARY GRAVES, *et al.*,     )
                             )
          Defendants.        )


## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants' Motion for Summary
Judgment [Doc. 22].  Pursuant to Rule 56 of the Federal Rules of Civil Procedure,
defendants move for summary judgment on all claims asserted by plaintiff, Lynn Michele
Daugherty.  Plaintiff has responded in opposition [Doc. 29], and defendants have filed a
reply [Doc. 31].  The Court has reviewed the motion and the parties' responsive and reply
briefs, along with the supporting affidavits, depositions, and exhibits, including the
audio/video DVD submitted by defendants [Docs. 22, 26, 27, 29, 30, 31].  After careful
consideration, and for the reasons explained herein, the Court will grant in part and deny
in part the motion for summary judgment.

I.     **Facts**

On or about May 29, 2011, Michael Russell ("Russell"), plaintiff's son, was the
subject of a traffic stop initiated by defendant Officer Ben Marlow ("Marlow") of the

Caryville Police Department.[1]  Russell was stopped on suspicion of driving under the influence after he swerved his vehicle.  When Marlow approached the car, he observed a case of beer on the floorboard of Russell's car and several empty beer cans in a bag hanging from the gear shift.  After some conversation, Russell agreed to perform a field sobriety test and after he failed to complete the test to Marlow's satisfaction, Marlow called defendant Officer Zachary Graves ("Graves") of the Jacksboro Police Department to come to the scene.  Graves arrived at the scene and turned on his in-car video.[2] Officers Marlow and Graves continued to investigate Russell for driving under the influence, with Graves administering a field sobriety test.  The officers decided not to arrest Russell, but because he admitted to drinking earlier in the evening, they informed him that he needed to call someone to come and pick him up.  Russell informed the officers that he would call his mother to come and get him.

At approximately 1:00 a.m., plaintiff received a telephone call from her son and proceeded to the scene of the traffic stop shortly thereafter.  When plaintiff arrived at the scene, she was "agitated," [Doc. 22-4, p. 29], and she questioned the officers about the traffic stop, the tests that had been performed, and why Russell was not allowed to drive his car home.  Plaintiff testified that her "voice was elevated" and she "was upset at the

---

[1] At some point prior to the traffic stop, which took place on or about May 29, 2011, Marlow had stopped Russell's brother driving a different car.  Marlow was not aware of that at the beginning of the stop but became aware at some point during the night.

[2] Marlow's police cruiser was not equipped with in-car video, so the portion of the stop prior to the arrival of Graves does not appear on the video provided to the Court.

whole situation" because "[i]t didn't make good sense to [her]" [Doc. 30-7, pp. 47-48]. Plaintiff and the officers had a confrontation and argued for several minutes.

In response to her arguing with the officers over whether her son passed the administered sobriety tests, the officers told plaintiff that "there's no reason to be like this," as they were letting her son go home. (Graves Cruiser Cam, 1:08:08-10). The officers then informed plaintiff that if she "want[ed] to be like this," referring to her arguing with them, they would take both her and Russell to jail. Plaintiff responded: "No, you're not taking me any-damn-where." (Graves Cruiser Cam, 1:08:21-23). Shortly afterward, as the argument continued, plaintiff raised her arm, pointing, and informed the officers that as they are not state highway patrolmen, they have no legal rights on the state highway on which they stopped her son.[3]

Plaintiff then turned to walk back toward her car, where her son was waiting inside, and then stopped, turned back, and while pointing at Marlow, told him to get out of her face.[4] (Graves Cruiser Cam, 1:08:50-54). At that point, the officers each pulled one of plaintiff's arms behind her back and informed her that she was under arrest, pushing her against the trunk of Marlow's cruiser while handcuffing her. Graves testified

---

[3] Plaintiff testified at her deposition that she did not leave the first time she was asked but that she complied the second time and started walking toward her car.

[4] When asked at his deposition whether plaintiff continued to say things to the officers as she walked back toward her car, Marlow testified she did, "as best as I can remember" [Doc. 30-3, pp. 18-19]. Plaintiff testified at her deposition that she did not recall whether she said anything to the officers as she walked away [Doc. 30-7, p. 51]. Graves testified that the officers followed plaintiff toward her car and that Marlow continued to talk to her as they did [Doc. 30-8, pp. 27-28]. Any comments plaintiff or the officers made during plaintiff's brief walk toward her car are inaudible on the cruiser video.

that he made the decision to arrest plaintiff "when she got in Ben Marlow's face" [Doc. 30-8, p. 28]. Plaintiff testified that when the officers handcuffed her, she "was trying to pull [her] arms back because [her] shoulder was - - [she] felt - - at that point [she] felt pain going down [her] shoulder and down [her] arm" [Doc. 30-7, p. 55]. Plaintiff testified that she continued to try to pull her arms around because the more the officers pulled her arms back, the worse it hurt. The conversation that transpired while plaintiff was pushed against the hood is somewhat inaudible on the cruiser video, but plaintiff mentioned her back and asked the officers to take her to the hospital, at which point one of the officers told her to "stop resisting" (Graves Cruiser Cam, 1:09:14-16). Plaintiff claimed that she was not resisting and asked again to be taken to the hospital. Marlow told plaintiff that she had been resisting the whole time and that she was not going to the hospital.

One of the officers told plaintiff that she was fine, and she informed them that she was under a doctor's care. As she continued to tell the officers to take her to the hospital, Marlow yelled at plaintiff that she does not tell them what to do because they are the police. A short time after plaintiff was first placed in handcuffs, after plaintiff informed the officers several times that she needed to be taken to the hospital, Graves radioed for an ambulance. Plaintiff again mentioned her back and began complaining that her right shoulder was hurting, all the while breathing heavily and sounding short of breath.

After plaintiff informed the officers that it would be better if she was handcuffed in the front rather than behind her back, Graves removed the handcuffs and handcuffed

plaintiff in the front. The officers continued to converse with plaintiff about the confrontation and the traffic stop of Russell while they waited for the ambulance. Less than twenty minutes later, an ambulance arrived and transported plaintiff to the hospital. Plaintiff testified that she tore her right rotator cuff as a result of the handcuffing and has submitted an affidavit of the physician, who treated her shoulder injury and determined that surgery was medically necessary [Doc. 30-2].

Graves later charged plaintiff with interfering with an investigation and resisting arrest, and both charges were dismissed after a preliminary hearing in Campbell County General Sessions Court.

Defendants Town of Caryville ("Caryville") and Town of Jacksboro ("Jacksboro") each require its law enforcement officers to attend and graduate from a fully accredited police training academy [Docs. 22-1, 22-2]. Caryville and Jacksboro additionally require that their officers be certified by the Peace Officer Standards and Training ("POST") Commission and that they receive forty hours of annual in-service training. Jacksboro's training requirements meet and exceed the requirements established by the POST Commission for Police Officers in the State of Tennessee [Doc. 22-1]. Caryville additionally encourages its officers to participate in special school classes [Doc. 22-2]. Graves completed his annual forty hours of in-service training and remained POST certified at all times relevant to this action [*Id.*]. Marlow is POST certified and also attended the Basic Police Recruit School at Walter State Community College [Doc. 22-3].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder.  *Anderson*, 477 U.S. at 250.  The Court does not weigh the

evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Civil Rights Claims

Plaintiff has brought claims against Officers Marlow and Graves under 42 U.S.C. § 1983. "[Section] 1983 by its terms[,] does not create any substantive rights but rather merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quotation and citation omitted). To prevail on a § 1983 claim, plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).

The Supreme Court has held, however, that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity, which Officers Marlow and Graves assert, "is an

7

affirmative defense that must be pleaded by a defendant official." *Id.* at 815. To determine whether an officer is entitled to qualified immunity, the Court of Appeals for the Sixth Circuit follows a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (internal citation omitted)).[5] Thus, the first step in any case in which a violation of § 1983 is alleged is that the plaintiff must identify the specific constitutional right allegedly infringed.

---

[5] As the Sixth Circuit explained in *Estate of Carter*:

> Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194 (2001). *Compare Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (taking the two-step approach), *with Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005) (taking the three-step approach). The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (internal quotation omitted). In cases subsequent to *Saucier*, the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable. *Cf. Champion*, 380 F.3d at 905.

408 F.3d at 311 n.2. Because, as found *infra*, the Court holds that there is triable issue as to whether the officers violated plaintiff's constitutional rights, the Court addresses the "clearly established" prong.

## B. Excessive Force

Plaintiff argues that Officers Marlow and Graves used excessive force when she was leaving the scene, told Marlow to get out of her face, and was slammed against the trunk of the patrol car and handcuffed behind her back.

Claims regarding a police officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In *Graham v. Connor*, the Supreme Court established guidelines to be followed by lower courts in evaluating excessive force claims in the course of an arrest or detention. Because these claims involve seizures, the Fourth Amendment "reasonableness" test is the appropriate standard by which such claims are judged. *Id.* at 394-95. This standard requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 395 (internal quotations and citation omitted). Furthermore, Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[,]" and the test of reasonableness requires careful attention to the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest. *Id.* at 396; *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (noting

that the question is whether the totality of the circumstances justifies the particular sort of

seizure).  As noted by the Supreme Court:

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight . . . .  The calculus of reasonableness must embody
> allowance for the fact that police officers are often forced to make split-
> second judgments—in circumstances that are tense, uncertain, and rapidly
> evolving—about the amount of force that is necessary in a particular
> situation.

*Graham*, 490 U.S. at 396.  Under *Graham*, courts reviewing excessive force claims

> must avoid substituting . . . personal notions of proper police procedure for
> the instantaneous decision of the officer at the scene.  We must never allow
> the theoretical, sanitized world of our imagination to replace the dangerous
> and complex world that policeman face every day.  What constitutes
> 'reasonable' action may seem quite different to someone facing a possible
> assailant than to someone analyzing the question at leisure.

*Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000) (reversing the district court's denial

of summary judgment on an excessive force claim and holding that the officers were

entitled to qualified immunity) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.

1992)).

"When construed in [plaintiff's] favor, the evidentiary record establishes a triable

issue of fact over whether [the] [o]fficer[s] used excessive force in securing her." *Crooks*

*v. Hamilton Cnty., Ohio*, 458 F. App'x 548, 549-50 (6th Cir. 2012) (finding an issue of

fact and denying qualified immunity where an officer handcuffed a sixty-five-year-old

defendant's hands behind her back, leading to a broken rib).  The *Crooks* court relied

upon *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993), *superseded on other*

*grounds as recognized by Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407-08 (6th Cir. 2007). In *Walton*, the Sixth Circuit found an issue of fact and denied the officer's qualified-immunity defense when:

> An officer pulled over Barbara Walton after he observed her two-year-old granddaughter standing on the front of the passenger seat without a child restraint. When the officer discovered Walton was driving with a suspended license, he placed her under arrest. Walton told the officer that she was returning from the doctor's office after receiving treatment for her sore shoulder and asked the officer not to handcuff her in the back. The officer refused. Once in the police vehicle, Walton cried, told the officer that her shoulder hurt and asked to remove the handcuffs. The officer again refused, saying they would get to the station shortly.

*Crooks*, 458 F. App'x at 550 (citations omitted). In denying qualified immunity, the court in *Walton* determined that the plaintiff's excessive force claim "could be premised on [the officer's] handcuffing Walton if he knew that she had an injured arm and if he believed that she posed no threat to him." *Walton*, 995 F.2d at 1342; *see also Turek v. Saluga*, 47 F. App'x 746, 749 n.2 (6th Cir. 2002) (recognizing that *Walton* was decided pre-*Saucier* and thus did not conduct the necessary reasonableness inquiry but affirming the usefulness of *Walton* as related to being handcuffed in an unreasonable manner as a basis for an excessive force claim).[6] The court in *Crooks* found that, as in *Walton*, the women posed no threat to the officers or others and asked to be handcuffed in the front

---

[6] The Sixth Circuit in *Marvin v. City of Taylor* held that "the value of *Walton* and similarly situated cases is strictly limited to the "clearly established" prong of the qualified immunity analysis because *Walton* did not perform the objective reasonableness analysis as announced by the Supreme Court in *Saucier*[.]" 509 F.3d 234, 347-248 (6th Cir. 2007) (distinguishing *Walton* and finding the actions of an officer handcuffing plaintiff with a shoulder injury behind his back objectively reasonable in light of his "heavily intoxicating state, abusive language, and his resistance to arrest," where plaintiff refused to obey a command to put his hands behind his back).

rather than the back due to a medical condition, and the officers refused, creating a triable issue of fact. 458 F. App'x at 550.

In evaluating an excessive force claim based in part upon handcuffing, courts must look at the totality of the circumstances, looking at the specific facts of each case. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Defendants claim that "the force, if any, used to arrest was necessary due to Plaintiff's active resistance and her belligerent, hostile behavior" [Doc. 26, p. 13]. Defendants also assert that any force used was reasonable and necessary in light of plaintiff's testimony that she was attempting to pull her arms back while the officers were handcuffing her.[7]

---

[7] For support, defendants compare this case to that of *Rosado v. City of Harriman, Tenn.*, also from the Eastern District of Tennessee. No. 08-CV-353, 2012 WL 4485226 (E.D. Tenn. Sept. 27, 2012) (Jordan, J.). In making such a comparison, defendants assert that as in *Rosado*, Officers Graves and Marlow used the force necessary "to restore the peace." *Id.* at *13. *Rosado* is distinguishable from the case at hand, however, as in *Rosado*, the court found that there was an "escalating domestic situation," as Rosado was arguing with his girlfriend and her daughter, who had called 911 and was still on the scene, throughout his arrest. *Id.* Rosado admitted in his deposition that he was intoxicated at the time of his arrest and had thrown a cell phone in the yard in order to further upset his girlfriend. *Id.* at *12. There was also evidence that Rosado continued to cuss at the defendant officers and was jerking his body off of the police car, resulting in an officer and Rosado tangling and falling to the ground. *Id.* at 13. In the case here, there is no evidence that plaintiff was intoxicated and the situation cannot reasonably be said to have been escalating to the point of making the force used to have been objectively reasonable, when plaintiff was arguing verbally, alone, with two officers. The police were not called because plaintiff was involved in a crime or acting in any way out of order; plaintiff drove to the scene on her own volition and was upset when she arrived.

12

Upon review of all of the facts and evidence before the Court, the Court finds a question of fact exists as to whether Officers Graves and Marlow used excessive force in the arrest and handcuffing of plaintiff. A reasonable jury could find that the actions of Graves and Marlow were objectively unreasonable in light of the fact that the evidence presented, when construed in the light most favorable to the plaintiff at this stage of the proceedings, does not show that a reasonable officer on the scene would have feared for the safety of plaintiff, himself, or others as a result of plaintiff's behavior. There is no evidence that plaintiff presented any danger to the officers or others or that she had a weapon of any kind. Moreover, while plaintiff appears on the video, and admitted at her deposition, to have been agitated and possibly angry while arguing with the officers, the officers were alone with plaintiff at the time of the arrest and the officers' actions were not required to keep the peace between plaintiff and any other persons. Plaintiff was not in any way attempting to escape or flee. There is evidence that the officers severely injured plaintiff's shoulder when they handcuffed her in tandem, tearing her rotator cuff, and when she first informed the officers that she had a bad back and needed to go to the hospital, nearly immediately after being handcuffed, the officers told her that she would not be going to the hospital and continued to tell her to stop resisting and forcefully pulled her arms back.

Upon review of the deposition testimony and the cruiser video, the Court additionally finds that the fact of whether plaintiff was resisting arrest, such that additional force may have been necessary at the time, is in dispute. The Court notes that

plaintiff was breathing heavily and appears on the video to have been in physical pain while she repeatedly requested to go to the hospital. The officers did move the handcuffs to the front of plaintiff's body and call an ambulance, but not until after plaintiff made repeated requests and the officers told her that she was fine and that she was not going to the hospital. The Court also finds that the fact that the crimes with which plaintiff was eventually charged, which were later dismissed, were relatively minor is a factor that weighs in favor of finding a question as fact as to whether excessive force was used in the course of her arrest.

Accordingly, when viewing the evidence in the light most favorable to plaintiff, the Court finds that Officers Graves and Marlow acted objectively unreasonably when they forcefully handcuffed and arrested plaintiff and that a triable issue of fact exists that Graves and Marlow committed constitutional violations.

### C.     Qualified Immunity

After a court determines that, when viewed in the light most favorable to the party asserting the injury, the facts show that an officer's conduct violated a constitutional right, the court must determine that the constitutional right was "clearly established." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). A constitutional right is clearly established if "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007). An officer is on notice that his conduct violates a clearly established constitutional right "if the state of the

law at the time of the alleged deprivation provides 'fair warning' that his actions are unconstitutional." *Humphrey v. Mabry,* 482 F.3d 840, 852 (6th Cir. 2007) (citing *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). Plaintiff bears the burden of showing that defendant officers are not entitled to qualified immunity. *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009).

"Prior to the events in question here, [the Sixth Circuit] found that the gratuitous use of force against a compliant non-threatening individual who had committed a relatively minor crime was not objectively unreasonable." *Solovy v. Morabito*, 375 F. App'x 521, 527-29 (6th Cir. 2010) (citation omitted) (reversing the district court's finding that the officer was entitled to qualified immunity where there were questions of fact as to excessive force and the alleged violated rights were clearly established). The Sixth Circuit "has held that the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right for purposes of the qualified immunity analysis." *Kostrzewa*, 247 F.3d at 641 (citations omitted).

The Court has already found that Officers Graves and Marlow's actions were objectively unreasonable and that a question of fact exists as to excessive force. Both the right to be free from the use of gratuitous force during the arrest of an individual for the commission of a relatively minor crime and the right to be free from excessively forceful handcuffing are clearly established constitutional rights, as found by the Sixth Circuit, and were so established at the time of the incident at issue here. When viewed in the light most favorable to plaintiff, the officers were on notice that handcuffing plaintiff in

such a forceful manner when she was verbally arguing with them, posed no additional threat, and was not attempting to leave the scene constituted excessive force. Accordingly, the Court declines to find summary judgment in favor of Graves and Marlow on the grounds of qualified immunity appropriate.

### D.     Probable Cause

In plaintiff's response to defendants' motion for summary judgment, plaintiff asserts that because her criminal charges were dismissed by the Campbell County General Sessions Court, defendants should be collaterally estopped from asserting the legality of the arrest, making qualified immunity unavailable to them.  Plaintiff claims that Officers Marlow and Graves had no probable cause to arrest her at the point when they grabbed her arms to handcuff her, tearing her rotator cuff.  In reply, defendants point to the Court's Memorandum Opinion and Order [Doc. 13], which clarified that plaintiff's complaint brought only a Fourth Amendment excessive force claim against Graves and Marlow pursuant to § 1983.  Defendants submit that plaintiff may not now, for the first time, allege a violation of her constitutional rights based upon her arrest without probable cause.

As defendants argue, plaintiff failed to include a claim for a Fourth Amendment violation based upon her arrest without probable cause in her complaint [Doc. 1].  While plaintiff's complaint notes that she was charged with resisting arrest and inference with a police investigation thirty days after the incident on May 29, 2011 [Doc. 1, ¶ 17], and that her charges were subsequently dismissed, the complaint includes no allegations of arrest

without probable cause in violation of her Fourth Amendment rights. In the "Causes of Action" section of plaintiff's complaint, she asserts that "Defendant Marlow and Defendant Graves are liable for false arrest by detaining her depriving her [sic] of freedom of movement without cause" [Doc. 1, ¶ 26]. In the Court's Memorandum Opinion and Order [Doc. 13, p. 8], "the Court conclude[d] that the complaint contain[ed] sufficient factual allegations to give defendants fair notice that plaintiff has alleged a violation of her Fourth Amendment right to be free from excessive force in the context of an arrest or seizure . . . ." The Court also noted that plaintiff had alleged state-law claims for assault, intentional infliction of emotional distress, and false arrest. Accordingly, in its Memorandum Opinion and Order, the Court construed any claim plaintiff alleged as to her arrest without cause to be a state-law claim and found that plaintiff's § 1983 claim was one for excessive force in violation of her Fourth Amendment rights.

Plaintiff now, in her response to defendant's motion for summary judgment, appears to assert that she was arrested without probable cause in violation of the Fourth Amendment. Defendants were not on notice as to any federal claim plaintiff may have sought to allege regarding a lack of probable cause to arrest her. Plaintiff had until November 18, 2012, nine months after the entry of the Court's Memorandum Opinion and Order, in which to file a motion for leave to amend her pleadings. Had plaintiff disagreed with the way the Court construed her § 1983 excessive force and state-law false arrest claims, plaintiff had nine months to file a request to add a claim for arrest without probable cause in violation of the Fourth Amendment. She failed to file such a motion

for leave, and the Court finds that plaintiff has not properly alleged a federal claim for arrest without probable cause. Accordingly, to the extent that plaintiff requests any relief as to such a claim, such request is denied.

### E. Municipal Liability

In her response, plaintiff asserts that neither Jacksboro nor Caryville provides guidelines to limit its officers' "unbridled police power[,]" and that Caryville had no policies or procedures for its officers in place at the time of the incident [Doc. 30, p. 10]. In support, plaintiff cites to the deposition testimony of Chief Johnny Jones, stating that the Caryville Police Department policy and procedure manual was approved by the city council and went into effect on August 6, 2012, well after the incident in question.

Neither Caryville nor Jacksboro can be held liable under § 1983 on the basis of *respondeat superior*. *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008). If either city maintained a policy or custom that caused the violation of plaintiff's rights, however, the city may be held liable under § 1983. *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted). As defendants point out, the Court has already dismissed any § 1983 claims based on alleged unconstitutional policies and procedures of Caryville and Jacksboro:

> To the extent plaintiff attempts, in her response to defendants' motion [to dismiss], to convert her claims into claims for municipal liability premised on unconstitutional policies and procedures, the Court will also dismiss

18

> these claims as plaintiff has pled no factual allegations relating to unconstitutional policies and procedures and no factual allegations relating to any allegation of decision-making authority on behalf of any defendant.

[Doc. 13, p. 10 (citations omitted)]. Accordingly, to the extent that plaintiff attempts to revive any such claims, that attempt is unsuccessful. Additionally, to the extent that any failure-to-train claim survived the Court's earlier Memorandum Opinion and Order, such claim is dismissed at this time, as having been included in the Court's earlier dismissal of all claims based upon the alleged unconstitutional policies and procedures of the cities. Accordingly, Caryville and Jacksboro are dismissed as defendants in this action.

### F.    State-Law Claims

#### 1.    Assault

Defendants assert that Marlow and Graves are entitled to summary judgment on plaintiff's assault claim as they "used reasonable and necessary force, consistent with standard police practice and their training, in arresting an individual who was aggressive, belligerent and noncompliant with their lawful commands" [Doc. 26, p. 25]. Defendants submit that collateral estoppel should bar plaintiff's assault claim after the Court finds the actions of Marlow and Graves to have been reasonable and grants summary judgment as to the Fourth Amendment excessive force claim. *See Partin v. Scott*, No. E2007-02604-COA-R3-CV, 2008 WL 4922412 (Tenn. Ct. App. Nov. 13, 2008) (affirming the trial court's finding that plaintiffs were collaterally estopped from asserting state-law tort claims for assault and false imprisonment or false arrest where a federal court had found

that probable cause existed to arrest plaintiffs and that the officers had not used excessive force).

The Tennessee Supreme Court has held that "if a defendant intends to create an apprehension of harm in the plaintiff, he or she has committed the intentional tort of assault." *Hughes v. Metro. Gov't of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 371 (Tenn. 2011). Upon review of the video and other evidence in this matter in the light most favorable to plaintiff, the Court finds that defendants have not met the burden necessary to prove entitlement to summary judgment in their favor. Defendants argue that a finding in their favor as to plaintiff's Fourth Amendment excessive force claim demands a decision in their favor as to plaintiff's state-law assault claim. As the Court has found after viewing the facts in the light most favorable to plaintiff that Graves and Marlow's use of force was not reasonable as a matter of law, the Court also denies summary judgment as to plaintiff's assault claim. *See Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (noting that defendant argued that if the court concluded that his use of force was reasonable as a matter of law then it should find him entitled to governmental immunity as to plaintiff's state-law assault and battery claims and upholding the denial of summary judgment on the assault and battery claims because the court found the use of force was not reasonable as a matter of law).

### 2. Intentional Infliction of Emotional Distress

Defendants claim that no proof exists that plaintiff suffered a serious mental injury as a result of the events surrounding her arrest and that there has been no deposition

testimony that Marlow and Graves intentionally inflicted emotional harm on plaintiff. Defendants point out that plaintiff has not offered expert testimony seeking to establish a serious mental injury and again claim that plaintiff's actions, rather than those of Marlow and Graves, were "outrageous" and that Marlow and Graves used "reasonable, minimal, non-deadly force to gain control of Plaintiff" [Doc. 26, p. 27].

"The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citations omitted). "Serious or severe" emotional injury has been defined as an injury "where a reasonable person, normally constituted, would be unable to cope with the mental stress engendered by the circumstances of the case." *Camper v. Minor*, 915 S.W.2d 437, 336 (Tenn. 1996) (internal quotations marks omitted); *see also Rogers*, 367 S.W.3d at 208 (looking to the *Camper* court's definition in the context of intentional infliction of emotional distress). No expert testimony is required to establish the serious mental injury necessary for a claim of intentional infliction of emotional distress. *Miller v. Willbanks*, 8 S.W.3d 607, 612, 616 (Tenn. 1999).

"The flagrant and outrageous nature of the defendant's conduct . . . adds weight to a plaintiff's claim and affords more assurance that the claim is serious." *Id.* at 613 (citations omitted). "[T]o constitute 'outrageous conduct' a defendant's act must have been 'so outrageous in character and so extreme in degree, as to go beyond all bounds of

decency, [so as] to be regarded as atrocious and utterly intolerable in a civilized society." *Nolan v. City of Memphis Schs.*, 589 F.3d 257, 270 (6th Cir. 2009) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).  Serious mental injury may be demonstrated by way of proof such as "a claimant's own testimony, as well as the testimony of other lay witnesses acquainted with the claimant[,]" "[p]hysical manifestations," and "evidence that a plaintiff has suffered from nightmares, insomnia, and depression or has sought psychiatric treatment may support a claim of a serious mental injury." *Id.* at 615 (citations omitted).[8]

At plaintiff's deposition, in response to a question about injuries she suffered as a result of this incident, she testified that "[t]his has been embarrassing.  Like I said, I had to go back on anxiety medicine.  It's not something I'm exactly proud of.  I've never had any previous trouble with the law" [Doc. 30-7].  In her response, plaintiff argues that she "has been humiliated by this entire incident" [Doc. 30, p. 14].  Plaintiff makes no argument as to the outrageousness of Graves and Marlow's conduct and does not allege that their conduct was "'so outrageous' in character and so extreme in degree, as to go beyond all bounds of decency[.]" *Nolan*, 589 F.3d at 270.  While the Court has found that a question of fact exists as to whether Graves and Marlow used excessive force in their arrest of plaintiff, the Court does not find that their conduct in arresting plaintiff was

---

[8] *See also Rogers*, 367 S.W.3d at 209-10 (providing a nonexclusive list of factors pertinent to a plaintiff's claim of serious mental injury, including evidence of nausea, vomiting, headaches, severe weight loss or gain, sleeplessness, depression, anxiety, crying spells or emotional outbursts, humiliation, embarrassment, anger, shame, evidence that a plaintiff sought out medical treatment, significant impairment of daily functioning, and others).

sufficiently outrageous or intolerable so as to raise a question of fact for the jury. Moreover, while plaintiff testified that she has been embarrassed by this incident, she also testified that "[i]t's not something I'm exactly proud of" [Doc. 30-7, p. 62]. Plaintiff's deposition testimony and argument in her response indicate that her embarrassment subsequent to the incident was in part due to her being embarrassed by her own behavior on the night in question. "[W]hile [plaintiff] complain[s] of embarrassment and humiliation, [she] present[s] no further proof as to any additional mental injury [she] suffered[,] and the Court "is not willing to identify such emotional injury, without further proof, as a serious mental injury." *Barbee v. Wal-Mart Stores, Inc.*, No. W2003-00017-COA-R3-CV, 2004 WL 239763, *3 (Tenn. Ct. App. Feb. 9, 2004).

In sum, the Court finds that sufficient evidence has not been presented to make the claim of intentional infliction of emotional distress a question for the factfinder, and Graves and Marlow are entitled to summary judgment on this claim.

### 3.    False Arrest

Defendants assert that Marlow and Graves are entitled to summary judgment on plaintiff's false arrest claim because probable cause existed to arrest plaintiff for resisting arrest and interfering with an investigation. In support, defendants submit that plaintiff admitted in her deposition that she attempted to pull her arms forward as she was handcuffed and that she was upset and raised her voice, as well as failed to obey a lawful command to leave the scene when first told.

23

Plaintiff's complaint asserts "that Defendant Marlow and Defendant Graves are liable for false arrest by detaining her depriving her (sic) of freedom of movement without cause" [Doc. 1, ¶ 26]. In her response, plaintiff claims that Marlow and Graves lacked probable cause to arrest her and that this lack of probable cause is proved by the fact that the Campbell County General Sessions Court dismissed the charges against plaintiff following a preliminary hearing.

A successful claim for false arrest and false imprisonment includes proof of "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). A detention or restraint is unlawful if an individual is detained without reasonable suspicion or probable cause. "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).

Plaintiff was charged with resisting arrest, defined as "intentionally prevent[ing] or obstruct[ing] anyone known to the person to be a law enforcement officer . . . from effecting [an] arrest . . . by force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602. As to plaintiff's second charge of interfering with a police investigation, defendants assert that such charges are commonly considered under Tenn. Code Ann. § 39-17-305, the disorderly conduct statute. Tenn. Code Ann. § 39-17-305 provides:

(a)  A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:

(1)  Engages in fighting or in violent or threatening behavior;

(2)  Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

(3)  Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b)  A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

(c)  A violation of this section is a Class C misdemeanor.

The Court disagrees with plaintiff's argument that the Campbell County General Sessions Court's dismissal of the charges against her after a finding of a lack of probable cause collaterally estops defendants from asserting that her arrest was legal. *See Manley v. Paramount's Kings Island*, 299 F. App'x 524, 530 (6th Cir. 2008) ("An arrest based on probable cause does not become invalid simply because the charges are subsequently dismissed.").  Upon review of the relevant statutes together with the facts and evidence, in the light most favorable to plaintiff, however, the Court finds that a question of fact exists as to whether probable cause existed to arrest plaintiff.  Accordingly, the Court finds that Graves and Marlow are not entitled to summary judgment on plaintiff's state-law false arrest claim.

## IV. Conclusion

Thus, and for the reasons explained herein, the Court **GRANTS in part** and **DENIES in part** defendants' Motion for Summary Judgment [Doc. 22]. The Court **GRANTS** the motion as to defendants Caryville and Jacksboro, and the Clerk is **DIRECTED** to terminate them as defendants in this action. The Court additionally **GRANTS** summary judgment on plaintiff's intentional infliction of emotional distress claim, and **DENIES** summary judgment as to plaintiff's § 1983 claim for excessive force and her state-law claims for assault and false arrest.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE